BROWN *v.* STATE OF MARYLAND

[No. 302, September Term, 1973.]

\* \* \*

MOSES and SMITH *v.* STATE OF MARYLAND

[No. 304, September Term, 1973.]

*Decided September 26, 1974.*

452

The causes were argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Jonathan A. Azrael, Assigned Public Defender,* for appellant Brown.

*Stephen A. Tarrant, Assigned Public Defender,* with whom was *Henry C. Engel, Jr., Assigned Public Defender,* on the brief, for other appellants.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Bernard A. Kole, Assistant State's Attorney for Baltimore City,* on the brief, for appellee in No. 302.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee in No. 304.

O'DONNELL, J., delivered the opinion of the Court.

The appellant, Carville Roland Brown, was convicted by a jury in the Criminal Court of Baltimore (Levin, J., presiding) of the armed robbery of one Grace Vance. The judgment

imposed upon his conviction was affirmed by the Court of Special Appeals in an unreported per curiam.[1]

About noon on February 8, 1972, Grace Vance, the sole employee in a dry cleaning store, was confronted by a man "with hair on his face"; with a gun placed at her back she was commanded to open the cash register and surrender its contents. About a week or two after the robbery the victim saw and recognized her assailant on two separate occasions in a nearby neighborhood bar and reported her observations to Detective Grady of the Baltimore City Police Department; she was advised that if she saw the gunman again "to call a radio car." The following weekend, on March 3, 1972, she did indeed again see him in a bar, the police responded to her call, she pointed out the appellant as her assailant and he was arrested. Taken to the police station he was photographed.

In her direct testimony, when asked whether she saw in the courtroom the individual who had robbed her, the witness replied: "I can't identify him without the hair on his face." At a bench conference the prosecutor told the trial court that he desired to submit a photograph to the witness, taken of the appellant at the time of his arrest, and intended to ask her if the person shown in the photograph was the individual who had robbed her. When defense counsel objected the trial court (at the bench conference) ruled that no foundation had been laid for the introduction of such a photograph. The court then excused the jury and sequestered the witness Vance to permit the offering of such foundation evidence. Out of the presence of the jury Detective Grady identified the appellant as the individual identified by the prosecutrix at the tavern; he testified concerning the appellant's arrest and the taking of the photograph which depicted him as he appeared at that time. The trial court then recessed and requested counsel to adjourn to chambers where a discussion in the defendant's absence ensued concerning the admissibility of the

---

1. Carville Roland Brown v. State (No. 273, Sept. Term, 1973, decided December 3, 1973).

photograph. The trial judge ruled that to avoid an "impermissibly suggestive" identification the prosecution would be required to produce and exhibit to the witness Vance five or six photographs of persons closely resembling the defendant and would then be permitted to ask her whether she could pick out (from such a group) the photograph of the man who robbed her. Although the prosecutor, arguing that the appellant between the time of his arrest and the time of trial had changed his facial appearance by the removal of a beard, or hair growth, objected to the procedure, counsel for the appellant concurred and felt the procedure ordered was "very fair and equitable under the circumstances." The detective was summoned to the chambers conference at the request of the trial court and there presented counsel with "at least 30 photographs" from which array counsel mutually agreed upon four photographs — as closely resembling the appearance of the appellant — to be included with the photograph taken of him at the time of his arrest. The detective gave no testimony in the chambers conference.

Upon a resumption of the proceedings in open court — in the presence of the jury and the appellant — Grace Vance, presented with the five photographs agreed upon by counsel selected the photograph of the appellant as that of her assailant; the arresting detective in his testimony identified the photograph as that taken at the time of the appellant's arrest.

The Court of Special Appeals, in affirming the appellant's conviction, stated:

> "Brown claims that the proceedings in chambers were a stage of the trial and asserts that because he was not present, the judgment must be reversed. If what occurred in chambers were a stage of the trial, he would be correct. *State v. Saul*, 258 Md. 100, affirming *Saul v. State*, 6 Md. App. 540. We find, however, that the proceedings in chambers were not a stage of the trial within the contemplation of the common law preserved in this

State by Art. 5, Declaration of Rights of the Constitution of Maryland and stated with particularity by Maryland Rule 775. We think the proceedings were no more than an attempt to formulate a method, fair to Brown, for a judicial identification through the viewing of photographs. The in-chambers discussion in substance concerned the admissibility of evidence and was within the rationale of our holding and the authorities supporting it in *State v. Tumminello*, 16 Md. App. 421. We hold that the absence of Brown did not violate his right to be present at the trial and does not compel reversal of the judgment."

The appellants Clifford James Moses and Richard Edward Smith were each convicted of assault with intent to rape following a jury trial in the Circuit Court for Harford County (Close, J., presiding). Their convictions and the judgments imposed thereon were affirmed by the Court of Special Appeals in an unreported opinion.[2]

Following the direct testimony of one Bernard Redd, a codefendant, who had been granted immunity, and a recess taken at the conclusion thereof, counsel for the appellant Moses, before beginning cross-examination, pointed out to the trial court that Redd during the recess had been seen speaking with another person in the courtroom in apparent violation of the order of sequestration of witnesses.

The trial court requested that counsel adjourn to chambers. At the commencement of the *in camera* proceedings the trial court asked counsel whether or not they wanted the defendants present; counsel for the appellant Moses stated that it was "not necessary." In chambers — out of the presence of the appellants — the trial court examined one Terry Terry, a sister of Redd, who acknowledged that during the recess she had spoken with her brother, but stated that she had merely inquired "where his lawyer was" and had asked "whose attorney was

---

2. Clifford James Moses and Richard Edward Smith v. State (No. 216, Sept. Term, 1973, decided November 28, 1973).

questioning him." In response to several questions by Moses' counsel about the reasons for her concern she responded "because he is my brother"; she also told the trial judge that she had not heard any admonition by the court to the witness not to talk to anyone.

After enjoining her not to talk to anyone "in front of the rail," the trial court concluded that there were no further matters requiring inquiry and reconvened the proceedings in open court. He informed the jury that during the recess a witness had in fact talked to someone in the courtroom after having been warned not to do so, that the witness had been approached by his sister, who had "come inside the rail" and asked a question which had nothing to do with the matters in evidence. The trial court then repeated its directive to all persons in the courtroom not to come "in front of the rail and become involved with the trial."

Concerning this issue Judge Moylan, for the Court of Special Appeals, stated:

> "Although it is clear that an accused has the right under Article 5 of the Declaration of Rights of Maryland and Maryland Rule 775 to be present at every 'stage of the trial,' we are persuaded that this brief conference in chambers to see if a violation of the sequestration rule had occurred was not a 'stage of the trial' within the contemplation of the rule. See *Midgett v. State*, 216 Md. 26; *Brown v. State*, 225 Md. 349; *Martin v. State*, 228 Md. 311; *State v. Saul*, 258 Md. 100; *Saul v. State*, 6 Md. App. 540; and particularly the excellent and full discussion by Judge Thompson in *State v. Tumminello*, 16 Md. App. 421."

We granted certiorari in each of the cases limited solely to the question of whether the petitioners had been denied their constitutional rights to be present during every stage of their respective trials.

Maryland Rule 775, effective January 1, 1962, is virtually a *pro tanto* adoption of Rule 49 of the Uniform Rules of Criminal Procedure (1952) proposed by the National

Conference of Commissioners on Uniform State Laws. Our Rule reads as follows:

> "The accused shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided in this Rule. The accused shall have the right to be present at the taking of a deposition taken at the instance of the prosecution. In a prosecution for an offense not punishable by death the defendant's voluntary absence after the trial has commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. The defendant's presence is not required at a reduction of sentence under Rule 764 (Revisory Power of the Court), fixing of the date of execution in a capital case, or at a proceeding in an appellant court."

The provisions of the Rule have been held to be a restatement of the common law right preserved by virtue of Article 5 of the Maryland Declaration of Rights. *Grohman v. State,* 258 Md. 552, 267 A. 2d 193 (1970), *cert. denied,* 401 U. S. 982 (1971); *State v. Saul,* 258 Md. 100, 265 A. 2d 178 (1970), *aff'g Saul v. State,* 6 Md. App. 540, 252 A. 2d 282 (1969); *Young v. State,* 5 Md. App. 383, 247 A. 2d 751 (1968). Although the right to be present at the trial is procedural in nature, it is a substantive right of the defendant, *La Guardia v. State,* 190 Md. 450, 457, 58 A. 2d 913, 916 (1948); it is a personal right of the accused and cannot be waived by his counsel, *State v. Saul, supra; Journigan v. State,* 223 Md. 405, 164 A. 2d 896 (1960), *cert. denied,* 365 U. S. 853 (1961); *Duffy v. State,* 151 Md. 456, 135 A. 189 (1926); *Young v. State, supra.*

It is, of course, fundamental not only under the provisions of Articles 5 and 21 of the Declaration of Rights, but under the provisions of the sixth amendment to the United States Constitution as well, that substantive testimony concerning

the guilt of the defendant cannot be submitted during his involuntary absence and in violation of his right to be confronted by the witnesses. *State v. Collins,* 265 Md. 70, 288 A. 2d 163 (1972), *aff'g Collins v. State,* 12 Md. App. 239, 278 A. 2d 311 (1971); *Dutton v. State,* 123 Md. 373, 91 A. 417 (1914); *Smith v. State,* 12 Md. App. 130, 277 A. 2d 622 (1971). *See also Pointer v. Texas,* 380 U. S. 400 (1965).

Long before the adoption of Maryland Rule 775 it was recognized that the accused has a right to be present at every *material* stage in the trial — the swearing of the witnesses, the presentation of the evidence, the charge to the jury, special instructions to the jury during its deliberation and the rendition of verdict — else there could be no valid judgment against him. *See Duffy v. State, supra,* where in the absence of the defendant the court repeated to the jury instructions which had previously been given. *See also Plump v. Warden,* 220 Md. 662, 153 A. 2d 269 (1959); *Midgett v. State,* 216 Md. 26, 139 A. 2d 209 (1958); *La Guardia v. State, supra; Dutton v. State, supra.*

In *Brown v. State,* 225 Md. 349, 170 A. 2d 300 (1961), *cert. denied,* 372 U. S. 960 (1963), this Court held that neither the provisions of Article 5 of the Declaration of Rights nor any other constitutional provisions — state or federal — required the presence of the defendant when proposed instructions to the jury were being considered by the trial court in chambers and law arguments thereon were being heard from counsel.

Judge Marbury, who delivered the opinion of the Court, stated:

> "We have construed Article 5, Declaration of Rights, as giving the defendant the right to be present at every stage of the trial. *Midgett v. State,* 216 Md. 26, 37, 139 A. 2d 209; *LaGuardia v. State,* 190 Md. 450, 58 A. 2d 913; *Duffy v. State,* 151 Md. 456, 135 Atl. 189; *Dutton v. State,* 123 Md. 373, 91 Atl. 417; cf. *Noel v. State,* 202 Md. 247, 252, 96 A. 2d 7; Orfield, *Criminal Procedure from Arrest to Appeal,* at page 413. These cases were concerned

with the giving of instructions or information to the jury or the taking of testimony in the absence of the appellant. They did not involve law arguments." 225 Md. at 351, 170 A. 2d at 301.

After citing with approval *Palmer v. Commonwealth,* 143 Va. 592, 130 S. E. 398 (1925), he further stated:

"In the *Palmer* case the court took the position that the argument on prayers was '*a suspension of the trial*' and that the court was not 'in session' but in '*mere preparation for the resumption of such trial*' by a 'prudent preparation' ; and on page 403 said:

'Our conclusion, then, is that the ruling of the trial court is plainly right, and that, when the trial of a felony case is temporarily suspended in order that the judge may investigate legal questions presented by the instructions which are tendered, this is no part of that trial before a jury at which the presence of the accused is necessary. His presence, however, is necessary when the trial proper has been resumed, when the trial judge has reached his conclusions and is about to communicate the instructions to the jury. When this occurs, the trial is resumed, but the interval has been devoted, not to the trial, but to preparing for the trial.'

The most compelling reasoning is set forth by Mr. Justice Cardozo in *Snyder v. Massachusetts,* 291 U. S. 97, 114:

'A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel * * *, and cross-examine his accusers.'

He also states at page 107 that the presence of the defendant, as a prerequisite of due process goes only 'to the extent that a fair and just hearing

would be thwarted by his absence.' " 225 Md. at 352-53, 170 A. 2d at 302. (Emphasis supplied.) [3]

The rationale of *Brown, supra,* was applied in *Martin v. State,* 228 Md. 311, 179 A. 2d 865 (1962), where the contention of the appellant that he was deprived of his constitutional right to be present at a hearing in chambers upon his motion for a judgment of acquittal was rejected.

Judge Marbury, again writing for this Court, stated:

"It is true that Article 5 of the Maryland Declaration of Rights gives the defendant in a criminal case the right to be present at every stage of his trial, but neither that article nor any other constitutional provision, State or Federal, requires the presence of the defendant when instructions to a jury are being considered and law arguments heard by the judge and counsel for the parties in chambers. *Brown v. State,* 225 Md. 349, 170 A. 2d 300, and cases there cited. A motion for a directed verdict is a matter of law which involves the legal sufficiency of evidence. There can be no doubt that the Brown case controls, and we hold that a motion for a directed verdict concerns a law argument, which is not a stage or step of the defendant's criminal proceedings which requires his presence. See also *Harris v. Commonwealth* (Ky.), 285 S.W.2d 489, where the defendant complained that the admissibility of evidence and a motion for a directed verdict were argued in his absence, but the court rejected his contentions and held that the right of a defendant to be present at a criminal proceeding does not extend to the reception of legal arguments." 228 Md. at 316-17, 179 A. 2d at 868.[4]

---

3. In accord with the holdings in Brown are Deschenes v. United States, 224 F. 2d 688 (10th Cir. 1955); United States v. Johnson, 129 F. 2d 954 (3d Cir. 1942), *aff'd on other grounds,* 318 U. S. 189 (1943).

4. *See* State v. Pullen, Me., 266 A. 2d 222 (1970), where our holding in Martin v. State, 228 Md. 311, 179 A. 2d 865 (1962), was cited and followed under a Rule similar to our Md. Rule 775. *See generally* Annot., 85 A.L.R.2d 1111 (1962).

This Court, in *Veney v. Warden*, 259 Md. 437, 271 A. 2d 133 (1970), adopted with approval the opinion of the post conviction judge who rejected the contentions of the petitioner that he was entitled to be present when, at the commencement of the trial, the trial court had discussed with counsel in chambers proposed procedures concerning whether or not the jury should be sequestered during the course of his trial.

In *State v. Saul, supra*, although it was held that a submission to the jury of a copy of the statute requested by them out of the presence of the defendant was a reinstruction of the jury requiring a reversal, the delivery of the note from the jury to the judge requesting a copy of the statute was merely a "communication" and that its reception by the judge, the conference with counsel and the agreement to give a copy of the statute to the jury did not amount "to a part of the trial."

In *State v. Tumminello*, 16 Md. App. 421, 298 A. 2d 202 (1972), the post conviction hearing judge found that Tumminello had been deprived of his right to be present at several stages of his trial — at a pretrial chambers conference and at several bench conferences — that those absences actually prejudiced his case, deprived him of due process of law and ordered a new trial.

The pretrial chambers conference concerned a discussion of the mental competency of a witness, who had testified in the earlier trial, to testify in the retrial; the prosecutor advised the court that because of the witness's condition he proposed to offer a transcript of the testimony given in the first trial; that if the court ruled that such testimony could not be used he intended to move to amend the indictment to reduce the amount of money allegedly obtained by reason of false pretenses. Counsel for Tumminello advised the court that he intended to object to the testimony of the witness, as well as to the transcript of the witness's testimony, would object to any amendment of the indictment and intended, as well, to move to suppress a tape recording of an alleged conversation between his client and the witness. Following the chambers conference, when the case was called for trial,

in open court and in the presence of the defendant, counsel made the objections he discussed in the conference, moved to suppress the tape recording and the prosecution moved to amend the indictment.

One of the bench conferences occurred during the testimony of a court reporter who had transcribed the tape recording when it appeared that the reporter had undertaken to assign identities to the voices on the tape on the basis of hearsay statements to him and the trial judge stated that it was his intention to admit the transcript, but that the reporter refer only to the voices heard on the tape as "voice number one and number two." At the same bench conference, upon inquiry by the trial judge, counsel for Tumminello advised that he had no intention of asserting a technical objection concerning any chain of custody over the recording.

A second bench conference occurred while Tumminello's counsel was cross-examining a clergyman concerning inconsistent testimony given at the earlier trial. When the prosecution objected to the scope of the cross-examination the trial court requested counsel "to come to the bench" ; Tumminello's counsel there advised the court that it was distasteful for him to examine the clergyman as to his credibility, that he believed the witness had a problem with recall — a memory failure — and that it was necessary for him in the manner of his cross-examination to lead up to the questions he intended to pose. Several additional bench conferences occurred when the same witness was called on behalf of the defense concerning his impeachment and again as to whether or not the witness's testimony had been admitted as "substantive or impeaching evidence."

The Court of Special Appeals granted leave to the State to appeal and reversed the order for a new trial. After noting that "following the conclusion of the pretrial conference each of the matters therein discussed was brought out in open court in the presence of Tumminello and in the absence of the jury," the court discussed whether or not any of the bench conferences constituted a "stage of the trial." After citing Article 5 of the Declaration of Rights, Maryland Rule

775, *Saul v. State, supra,* and *Brown v. State, supra,* Judge Thompson, who delivered the opinion for that court, stated:

"The hearing judge attempted to distinguish these authorities on the basis that the court was discussing questions of law as opposed to questions of fact. It will be observed in the instant case, that all but one of the discussions out of the presence of the accused concerned the admissibility of evidence. Although the discussion of admissibility of evidence necessarily involved some factual discussions, the essential questions considered in each instance were legal. The admission of evidence is a legal question as much as is the discussion of the instructions to be given. In both instances there might well be discussions of facts in order to consider either the proper instructions to give or the proper ruling to make on the evidence, indeed, it is difficult to conceive that either issue could be discussed in a vacuum without some reference to the facts of the particular case involved. The distinction drawn by the hearing judge is untenable.

We hold that the conferences in this case between counsel and the trial judge on the admissibility of evidence were not a part of the trial. This ruling was foreshadowed by *Martin v. State,* 228 Md. 311, 179 A. 2d 865, wherein the Court held that an argument on the motion for a directed verdict was not a stage of the trial. In that case the Court cited *Harris v. Commonwealth of Kentucky,* 285 S.W.2d 489, stating that the Court had held that an accused need not be present while court and counsel argued 'the admissibility of evidence and a motion for directed verdict.' See also *Veney v. Warden,* 259 Md. 437, 271 A. 2d 133. Our ruling is supported by cases throughout the country, both state and federal. *Johnson v. United States,* 318 U. S. 189, 63 S. Ct. 549, 87 L. Ed. 704, (1943). Mr. Justice Douglas speaking for a unanimous Court, held that a bench

464

conference on the propriety of a cross-examination violated no right of an accused. *United States v. Lewis*, 420 F. 2d 686, (5th Cir.); *Peterson v. United States*, 411 F. 2d 1074, (8th Cir.); *Stein v. United States*, 313 F. 2d 518, (9th Cir.), cert. den. 373 U. S. 918, 83 S. Ct. 1307, 10 L.Ed.2d 417; *Cox v. United States*, 309 F. 2d 614, (8th Cir.); *People v. Izzo*, 14 Ill. 2d 203, 151 N.E.2d 329, 89 A.L.R.2d 187, cert. den. and appeal dismissed 362 U. S. 403, 80 S. Ct. 812, 4 L.Ed.2d 864; *Ramer v. State*, 40 Wis. 2d 79, 161 N.W.2d 209, cert. den. 394 U. S. 989, 89 S. Ct. 1476, 22 L.Ed.2d 764; *State v. Clark*, 49 Wis. 2d 161, 181 N.W.2d 355. Other cases are collected in 85 A.L.R.2d 1111, 1115.

A part of the pre-trial conference in the instant case concerned possible amendment of the indictment. The particular discussion arose out of the discussions of admissibility of evidence and to our mind is no more a stage of the trial than was the discussion of the evidence." 16 Md. App. at 436-37, 298 A. 2d at 210.

The progenitor of Rule 49 of the Uniform Rules of Criminal Procedure, the model for Maryland Rule 775, is Rule 43 of the Federal Rules of Criminal Procedure.[5] That Rule, substantially identical, additionally permits, in misdemeanor prosecutions, the arraignment, plea, trial, and imposition of sentence in the defendant's absence with his written consent.[6]

5. Fed.R.Crim.P. 43 reads as follows:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial and imposition of sentence in the defendant's absence. The defendant's presence is not required at a reduction of sentence under Rule 35."

6. *See* Uniform Rule of Criminal Procedure 49, Comment.

In *United States v. Jorgenson*, 451 F. 2d 516 (10th Cir. 1971), *cert. denied*, 405 U. S. 922 (1972), the defendant complained that he was not present on seven occasions when conferences were held. The Court, after observing that four such instances had occurred after the jury had been excused, held that the record failed to show the appellant's absence and that such absence, without proof, would not be inferred. A subsequent bench conference occurred between the trial judge and a juror at which the juror disclosed that he may know one of the government's prospective witnesses.[7] Although such conference was out of the presence of the defendant and his counsel, the Court noted that the entire conversation was thereafter read by the reporter in court and there was no indication that Jorgenson was not then present. Concerning the remaining conferences the Court stated:

> "F.R.Crim.P. Rule 43 requires that the defendant be present 'at every stage of the trial * * *.' We held in Ellis v. Oklahoma, 430 F.2d 1352, 1355 (10th Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971), that 'a criminal defendant does not have an absolute constitutional right to be a participant in such *in camera* discussions where his lawyer is present * * *.' We further held 'the question narrows itself to whether the communication itself, as related in the *in camera* proceeding, was actually prejudicial.' Our review of the record fails to reveal any prejudice to appellant's cause being occasioned by his absence. We find no reversible error in his absence. Jones v. United States, *supra.*" 451 F. 2d at 521.

In *United States v. Sinclair*, 438 F. 2d 50 (5th Cir. 1971), the trial court excused the jury and conferred with counsel in chambers — out of the presence of the defendant — concerning the scope of the testimony to be given by one Kreyger, a former cellmate of a codefendant, Field. In the

---

7. *See* Hunt v. State, 12 Md. App. 286, 278 A. 2d 637, *cert. denied*, 263 Md. 715 (1971).

chambers conference Kreyger under oath stated what he knew about the case, in the course of which he related that Field, out of the presence of the other defendants, had told him that he (Field) "had dropped the weights on the officer's head," and that Field told him that Sinclair and Miller had helped him smuggle the weights into the cell area of the penitentiary. The trial judge in the conference ruled that Kreyger's testimony was admissible against Field, but that the witness ought not to testify (before the jury) concerning anything that Field had said about the participation by Miller and Sinclair. The trial judge further observed that if Kreyger "stayed away" from testifying to anything that Field had said about the codefendants and the weights he did not see any problem about the offering of Kreyger's testimony before the jury. He further warned trial counsel to assist the court in avoiding such questions as might elicit from Kreyger what Field had said about the other defendants. Upon a resumption of the trial when Kreyger took the stand the trial judge "admonished the jury that 'unless the other two defendants were present and heard this conversation [between Kreyger and Field], and I don't understand they were, that the jury will not consider this testimony as evidence against the other two defendants, but only against the defendant Field.' " Kreyger complied with the court's instructions given in chambers as did counsel. On appeal Sinclair alleged that he had been prejudiced by his exclusion from the chambers conference. In rejecting this contention the Court stated:

> "In these circumstances it cannot be said that Sinclair was prejudiced by what took place in the trial judge's chambers. On the contrary, he was spared the risk of injury which might have occurred had Kreyger blurted out his whole story in the presence of the jury or had overzealous counsel extracted from Kreyger the hearsay testimony incriminating Sinclair. Although one can imagine cases when the presence of witnesses in chambers might be regarded as a stage of a trial at which a defendant would have the right to be present under

the Sixth Amendment or F.R.Crim.P. 43, the meeting in chambers here was (1) not prejudicial to Sinclair (2) was in the nature of a conference on a point of law and (3) in any event, was agreed to, without objection, by the defendant through his attorney." 438 F. 2d at 52.

*United States v. Gradsky,* 434 F. 2d 880 (5th Cir. 1970), *cert. denied,* 401 U. S. 925 (1971), involved evidentiary hearings conducted following a remand to determine whether the defendants' convictions had been tainted by illegal wire tap evidence. During those proceedings the appellants were represented by counsel but were themselves absent. After their convictions had been reinstated upon the finding that their convictions had not been tainted by such illegal evidence, they asserted that their constitutional rights to be present had been violated. In holding to the contrary the Court stated:

"The issue during the evidentiary hearings was not one of guilt or innocence but one of 'taint'. The purpose was to allow government employees connected with the wiretap to give testimony relevant to the question of whether the evidence leading to appellants' convictions was tainted. Their testimony was insisted upon by appellants' counsel. It is apparent that these hearings were not a 'critical stage' of the proceedings within Rule 43, and appellants' actual presence could not have aided their defense. In Stein v. United States, 313 F.2d 518, 522 (9th Cir. 1962), the court held that '(t)he presence of a defendant must bear a reasonably substantial relationship to the opportunity to defend. The Constitution does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow.'" (Footnote omitted.) See Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674 (1934); Pope v. United States, 287 F.Supp. 214, 218 (W.D.Tex.1967), aff'd. 398 F.2d 834, cert. den. 393

U.S. 1097, 89 S.Ct. 886, 21 L.Ed.2d 787 (1968)." 434 F. 2d at 883-84.

In *Cox v. United States*, 309 F. 2d 614 (8th Cir. 1962), the government attorney in examining a witness appeared to undertake to impeach the witness. The trial court, taking a recess, conferred with counsel in chambers — out of the presence of the defendant — and there asked the prosecutor whether or not he was surprised by the answers given by the witness; the court then requested that he read into the record the grand jury testimony given by the witness to which he was making reference. Counsel for the defendant noted an objection on the ground that the prosecutor was impeaching his own witness.

The United States Court of Appeals in rejecting the contention of the appellant that his right to be present had been violated stated:

> "It is clear from reading the record that this was a conference with the attorneys and was not a part of the actual trial before the jury. It was held at the court's invitation to permit the trial judge to find out what government counsel was trying to do by his questioning, and, as it developed, to acquaint the trial judge with the nature of the testimony the government intended to offer. After returning to the courtroom, in the presence of the appellant and the jury, the questions and answers read to the court in chambers, were read. The recess and the proceeding in chambers were to protect the rights of the appellant Cox by not allowing a witness to be questioned in the jury's presence about matters which did not affect his testimony and which did not refresh his recollection. Such conferences are usual trial court procedure. Frequently, a trial judge will ask for an exhibit such as the grand jury transcript, take it to his chambers and alone and out of the presence of counsel, will read it and prepare for a ruling. The proceeding here was no different except that the judge had counsel present

and instead of reading the transcript himself had counsel read it.

. . .

... We conclude that the proceedings which occurred in chambers were not in the nature of a trial at which, under Rule 43, the defendant is entitled to be present. It is not unusual for a judge to call counsel into chambers and discuss matters of evidence, the form of questions, instructions proposed, and other matters looking to a more orderly trial, without having a defendant present. Appellant's help was not needed by the judge in order to make a ruling. His presence could hinder an orderly discussion. This conference was not a part of the trial within the meaning of Rule 43. [Federal Rules of Criminal Procedure.]

We hold that appellant was not deprived of the substance of a fair trial in the holding of this conference in his absence." 309 F. 2d at 616.

In rejecting the contention of the defendant that the trial court had committed prejudicial error in excluding him from a pretrial conference and a "side-bar conference," the Court, in *United States v. Malinowski*, 347 F. Supp. 347 (E.D.Pa. 1972), *aff'd* 472 F. 2d 850 (3d Cir.), *cert. denied*, 411 U. S. 970 (1973), stated:

"The 'pretrial conference' from which defendant was excluded was merely a meeting of counsel in Chambers two days prior to the June 10, 1971 hearing on the issue of selective prosecution and concerned only procedures to be followed during the hearing and did not involve any factual or legal issues. The side-bar conference was on the second day of the trial and pertained to measures to keep the jury away from the public.

It was clearly not error to exclude the defendant from these two conferences. The subject matter of both was collateral to the proceedings and could not

be considered a stage of trial within the rule." 347 F. Supp. at 355. (Citations omitted.)

To the same effect *see United States v. Lewis*, 420 F. 2d 686 (5th Cir. 1970), where the appellant assigned as error a violation of Fed.R.Crim.P. 43 by his absence from four chambers conferences between the court and counsel. The conferences concerned (a) the production by the government and discovery unto defense counsel of a written prison report; (b) a discussion as to whether or not a fellow inmate, who contended that he was being forced to offer perjured testimony, would be permitted to testify (after conducting a separate hearing on that issue. the trial judge excused the witness when it was ascertained he "knew nothing about the case"); and (c) two conferences to discuss jury instructions.[8]

*See also Stein v. United States*, 313 F. 2d 518 (9th Cir. 1962), *cert. denied*, 373 U. S. 918 (1963), where the defendant was not present at a conference between the court and counsel at which recordings were played of an incriminatory conversation between the appellant and his coconspirators, as a result of which the court ruled the recordings inadmissible. In rejecting the appellant's contention, the Court stated: "[T]he presence of a defendant must bear a reasonably substantial relationship to the opportunity to defend. The Constitution does not assure 'the privilege of presence when presence would be useless or the benefit but a shadow.' " 313 F. 2d at 522.

*Palmer v. Commonwealth,. supra,* cited with approval in *Brown v. State, supra,* was followed in *Williams v. Commonwealth,* 188 Va. 583, 50 S.E.2d 407 (1948). In *Williams,* defense counsel objected to a question posed in connection with the admissibility of evidence; the trial judge retired to chambers with counsel, where, after hearing argument, he concluded that the question was proper. When the proceedings resumed in the presence of the jury and the defendant the court announced that the objection had been overruled and the witness would be permitted to answer; an

---

8. *See* Brown v. State, 225 Md. 349, 170 A. 2d 300 (1961), *cert. denied*, 372 U. S. 960 (1963), concerning conferences on instructions.

exception was noted. After observing that although the trial judge had heard argument on the objection out of the presence of the accused, the ruling had been made in his presence in open court, and "nothing was done in the absence of the accused that could affect his interest." The Court, on the authority of *Palmer*, held that the conference had been "a temporary suspension of the trial for the judge to be advised upon a purely legal question that had arisen to the end that a correct ruling could be made" and opined that the defendant's right of personal presence, although to be rigidly and jealously guarded, "yet in its protection and enforcement must not be so enlarged as to exceed its true scope and thereby made to include all inquiry into and consideration of purely legal matters by the trial judge which are in fact and reality merely careful and prudent preparation for the resumption and conduct of the trial." 188 Va. at 593, 50 S.E.2d at 411-12. The rationale of *Harris v. Commonwealth, supra,* cited with approval by this Court in *Martin v. State, supra,* was followed and applied in *Thomas v. Commonwealth,* 437 S.W.2d 512 (Ky. 1969), *cert. denied,* 397 U. S. 956 (1970), where the appellant contended that a "material portion of his trial was conducted in his absence" when, in chambers, "legal questions were argued" concerning the impeachment of a dying declaration made by the victim. The Kentucky court, on the authority of *Harris*, held that "the presence of the accused is not required during consultation or other preliminary proceedings which do not affect the question of his guilt or innocence." 437 S.W.2d at 515.

In *People ex rel. Lupo v. Fay,* 13 N.Y.2d 253, 196 N.E.2d 56, 246 N.Y.S.2d 399 (1963), *cert. denied,* 376 U. S. 958 (1964), the relator sought habeas corpus relief alleging that during his grand larceny trial he was absent from the courtroom when his counsel argued a motion for a mistrial on the ground that further deliberation by the jury would amount to coercing a verdict.

In holding that the defendant's absence during the argument for discharge of the jury "did not affect any substantial right of his and did not invalidate the

subsequent judgment of conviction," the New York Court of Appeals, speaking through Chief Judge Desmond, stated:

"But the right to be present throughout the trial, being derived from the right to a jury trial and the right to defend and to be heard, must be kept within the limits of common sense and reason (*People v. Bragle*, 88 N.Y. 585). It is not literally true that after indictment nothing may validly be done in the defendant's absence, otherwise he would have to be in court during the argument of any motion of whatever kind and, indeed, during the presentation of any appeal. There is no such requirement in decisions or by custom or tradition (see *People v. Vail*, 6 Abb.N.C. 206, People v. Clark, 1 Parker Cr.Rep. 360). . . .

While not directly controlling on us, *Snyder v. Massachusetts* (291 U.S. 97; defendant absent during jury's 'view' of the locus) is a sound, fair guide for decision in such cases. Due process, held the Supreme Court in *Snyder,* mandates the presence of a defendant at his felony trial to the extent only that his presence is necessary for a fair and just hearing of his cause and he must be deemed to have the absolute right to hear everything the jury hears (see *United States v. Johnson,* 129 F.2d 954, aff'd. 318 U.S. 189) so that his may be the opportunity to confront his accusers and advise with his counsel. Justice Cardozo wrote that the inquiry should be: whether the defendant's presence at the particular trial stage had 'a relation, reasonably substantial to the fullness of his opportunity to defend against the charge' (*Snyder v. Massachusetts,* 291 U.S. 97, 105-106, *supra*). Application of that test here defeats the writ." 13 N.Y.2d at 256-57, 196 N.E.2d at 58, 246 N.Y.S.2d at 401.

*People v. Boehm,* 270 Cal.App.2d 13, 75 Cal. Rptr. 590 (1969), involved a conference in chambers — in the absence

of both Boehm and his counsel, before the commencement of his trial, as a result of which immunity was granted a codefendant and the charges against him were dismissed. Boehm urged that such proceedings violated his "due process" rights as well as the provisions of the California Penal Code § 1043. In rejecting his "due process claim" the court stated:

> "As to the due process contention, the United States Supreme Court in *Snyder v. Massachusetts,* 291 U.S. 97, 107 [78 L.Ed. 674, 679, 54 S.Ct. 330, 90 A.L.R. 575], has stated: 'So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process *to the extent that a fair and just hearing would be thwarted by his absence and to that extent only.*' (Italics added.) The rule has been expressed in *In re Dennis,* 51 Cal.2d 666, 672-673 [335 P.2d 657], as follows: 'In other words, it appears that when the presence of the defendant *will be useful, or of benefit to him and his counsel,* the lack of his presence becomes a denial of due process of law.' (Italics added.) In *Dennis* (p. 672) the court quoted with approval from *Snyder v. Massachusetts, supra,* the following: 'Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow.' " 270 Cal.App.2d at 19, 75 Cal. Rptr. at 594.

After noting that Section 1043 of the Penal Code provided that "the defendant must be personally present at the trial," the court held that the section required the defendant's presence "only at such stages of the trial in which his substantial rights may be affected by the proceedings," and that his presence is not necessary at proceedings "which are merely preliminary or formal wherein no matters affecting his guilt or innocence are presented." 270 Cal.App.2d at 19-20, 75 Cal. Rptr. at 594.

The same result was reached in *Shockley v. State*, Del., 269 A. 2d 778 (1970), where the defendant was absent from a pretrial hearing conducted under a statute concerning the grant of immunity to a prospective witness.

It has similarly been held in *Martin v. Commonwealth*, 397 S.W.2d 65 (Ky. 1965), *cert. denied*, 384 U. S. 911, *rehearing denied*, 384 U. S. 958 (1966), that neither the appellant's right to be present nor his right of confrontation and cross-examination under the sixth amendment were violated when the trial judge, out of his presence, in chambers questioned the prosecuting attorney, who had been defense counsel for the defendant's accomplice at a previous trial, concerning any possible conflicts of interest, since the prosecuting attorney so questioned by the court was not a witness in the trial of the case.

*See also State v. Thompson*, 110 Ariz. 297, 518 P. 2d 120 (1974) (where the admissibility of a tape recording made of the interrogation of the defendant was argued in chambers); *Gelhaar v. State*, 58 Wis. 2d 547, 207 N.W.2d 88 (1973) (where none of the matters discussed at an in chambers conference and at a bench conference "went to the guilt or innocence of the defendant"); *State v. White*, Me., 285 A. 2d 832 (1972) (where in a chambers conference the court conducted a hearing concerning the admissibility of portions of a deposition taken from a witness after objection to its use had been made); *State v. Ritchey*, 107 Ariz. 552, 490 P. 2d 558 (1971) (where the court in chambers examined the prosecuting witness concerning her competency [because of her age]); [9] *State v. Clarke*, 49 Wis. 2d 161, 181 N.W.2d 355 (1970) [10] (where defense counsel on cross-examination inquired of a police officer the reason the defendant had been arrested, the prosecuting attorney had objected to the question and the court held a brief chambers conference with counsel before ruling).

---

9. *See* White v. State, 7 Md. App. 416, 256 A. 2d 174 (1969), where the court conducted a pretrial hearing, in open court, concerning the physical competency of the appellant to stand trial without the appellant being present, and the Court of Special Appeals held, on the particular facts of the case, that "the hearing was not a part of the trial at which her presence was required."

10. Cited in State v. Tumminello, 16 Md. App. 421, 298 A. 2d 202 (1972).

In *Snyder v. United States*, 291 U. S. 97 (1934), quoted in *State v. Collins, supra, Brown v. State, supra, People v. Boehm, supra,* and cited in *Veney v. State, supra, State v. Tumminello, supra, United States v. Gradsky, supra, People ex rel Lupo v. Fay, supra,* and *State v. Clarke, supra,* the United States Supreme Court held that there was no denial of "due process of law" under the fourteenth amendment to the Constitution when, under the provisions of a Massachusetts statute the jury was directed to view the scene of the crime and the motion of counsel for Snyder that his client be permitted to view the scene with the jury was denied. Mr. Justice Cardozo, who delivered the majority opinion for the Court, after pointing out the distinction "between requirements in respect of presence that have their source in the common law, and requirements that have their source, either expressly or by implication, in the federal constitution," stated: "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." 291 U. S. at 107-08.[11]

A trenchant observation made by Mr. Justice Cardozo is here worth repeating. He stated:

> "A fertile source of perversion in constitutional theory is the tyranny of labels. Out of the vague precepts of the Fourteenth Amendment a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations. Forthwith another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence. A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his

---

11. On the authority of Snyder v. United States, 291 U. S. 97 (1934), the Court in Johnson v. United States, 318 U. S. 189, *rehearing denied,* 318 U. S. 801 (1943), held that notwithstanding a waiver by failing to except to the ruling, the exclusion of the petitioner from the courtroom while counsel argued the propriety of the scope of his cross-examination did not deprive him of his right to be present during the trial.

to advise with his counsel [citations omitted], and cross-examine his accusers. [Citations omitted.] Let the words 'evidence' and 'trial' be extended but a little, and the privilege will apply to stages of the cause at which the function of counsel is mechanical or formal and at which a scene and not a witness is to deliver up its message. In such circumstances the solution of the problem is not to be found in dictionary definitions of evidence or trials. It is not to be found in judgments of the courts that at other times or in other circumstances the presence of a defendant is a postulate of justice. There can be no sound solution without an answer to the question whether in the particular conditions exhibited by the record the enforced absence of the defendant is so flagrantly unjust that the Constitution of the United States steps in to forbid it." 291 U. S. at 114-15.

## The *Brown* Case

When the trial court recessed to chambers with counsel it was confronted with an issue on the admissibility of the photograph. No evidence was elicited from any witness; hence there was no involvement of the appellant's right to confrontation and to assist in cross-examination.[12] As a result of the dialogue between the court and counsel a rule of procedure for the introduction of photographic evidence, designed primarily for the protection of the appellant, was fashioned. His counsel felt that the procedure mandated by the trial court was "fair and equitable" and when the trial resumed the procedure adopted was followed in the presence of the appellant and before the jury. The *in camera* proceedings bore no reasonable substantial relationship to the opportunity of the appellant to defend; there is no showing of anything that Brown could have done if he were

---

12. The detective who entered chambers — assuming he was Detective Grady — gave no testimony, but merely, at the request of the court, produced for inspection by counsel a number of photographs so that counsel might agree upon that group which most closely resembled the appellant.

there and nothing that he could have gained; his presence would have been useless.

Although the appellant does not here challenge the propriety of his exclusion from the bench conference at which the prosecutor proffered the photograph taken at the time of his arrest and at which the trial court sustained his counsel's objection to its introduction because no foundation had been laid, we observe that this brief dialogue between the court and counsel — as did the chambers conference — involved solely the reception of legal arguments as to the admissibility of the exhibit.

Both the chambers conference and the bench conference were temporary suspensions of the trial to allow an investigation of the legal questions involved — the admissibility of the photograph and to permit the trial court to make its ruling; neither was a "stage of the trial."

None of Brown's "due process rights" nor his rights under Article 5 of the Declaration of Rights — as enunciated in Maryland Rule 775 — were violated when he was not present at either the bench conference or the proceedings in chambers.

### The *Moses — Smith* Cases

Upon the request of a defendant under Maryland Rule 753, the sequestration of witnesses is mandated. *Swift v. State,* 224 Md. 300, 167 A. 2d 762 (1961); *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433, *cert. denied,* 361 U. S. 847 (1959). *See also Gwaltney v. Morris,* 237 Md. 173, 205 A. 2d 266 (1964); *State Roads Comm'n v. Creswell,* 235 Md. 220, 201 A. 2d 328 (1964). The purpose of the rule and its civil counterpart (now Maryland Rule 536) is to prevent a prospective witness from being taught or prompted by the testimony of another. *Burton v. State Roads Comm'n,* 251 Md. 403, 247 A. 2d 718 (1968); *Gwaltney v. Morris, supra; Conway v. State,* 15 Md. App. 198, 289 A. 2d 862, *cert. denied,* 266 Md. 735 (1972), *cert. denied,* 413 U. S. 920 (1973).

It is within the sound discretion of the trial court to determine whether or not the testimony of a witness who has violated a rule of sequestration is admissible or should

be excluded. *Cunningham v. State,* 247 Md., 404, 231 A. 2d 501 (1967), *cert. denied,* 390 U. S. 908 (1968), *vacated in part,* 408 U. S. 938 (1972) [capital punishment]; *Mayson v. State,* 238 Md. 283, 208 A. 2d 599 (1965).[13] The complete exclusion of the testimony of witnesses for a violation of the sequestration rule is not lightly to be imposed as a penalty even upon an offending party. *Gwaltney v. Morris, supra.*

When, after the recess and before cross-examination of Redd, the trial court was notified of an apparent violation by the witness of the order of sequestration, it was then incumbent upon the trial judge to make an investigation pursuant to the discretionary power vested as to the imposition of any sanction. The inquiry then conducted by the trial court involved a question of law as to whether or not the testimony of Redd would remain admissible or be excluded.

Although the court received testimony from Terry Terry out of the presence of the appellants, such evidence was unrelated to the issue of their guilt or innocence and completely collateral thereto. In issue was the ruling which the court might have been required to make for any demonstrated violation of the sequestration order. Since M's. Terry was not a witness in the trial the court's examination of her in chambers concerning her verbal contact with the witness did not deprive the appellants of any right of confrontation or defeat any right of cross-examination. Such facts as were elicited during her examination were preliminary to a ruling as to whether or not there had been a violation of the rule and whether or not Redd's testimony should be stricken.

The inquiry made by the court in the *in camera* proceedings was within the ambit of a "policing" by the court of its order; as such it was during a suspension of the appellants' trial and not within a "stage" thereof. After the trial court, from its inquiry, was satisfied that there had been no violation of the order, the ruling was announced upon a resumption of the proceedings, in the presence of the

---

13. *See* Annot., 14 A.L.R.3d 16 (1967, Supp. 1973).

appellants, when the jury was advised succinctly of the subject matter of the conference, that there had been verbal contact between the witness and his sister, but that it "had nothing to do with matters in evidence." There is no showing that the presence of the appellants would have been useful or of benefit to them or their counsel; their absence bore no reasonable substantial relationship to their opportunity to defend.

The reliance by the appellants upon *Commonwealth v. Robichaud*, 358 Mass. 300, 264 N.E.2d 374 (1970); *People v. Medcoff*, 344 Mich. 108, 73 N.W.2d 537 (1955); *People v. Harris*, 43 Mich. App. 746, 204 N.W.2d 734 (1972); and *People v. Fountain*, 43 Mich. App. 489, 204 N.W.2d 532 (1972); is misplaced. Each of those cases involved an examination by the court, out of the presence of the respective defendants, of a juror or jurors who had been accused of misconduct during the course of the trial of their cases. Holding, as they do, that any alleged misconduct on the part of a member of the jury affects a defendant's substantial rights to a trial by an impartial jury, they are factually inapposite and their rationale cannot be extended to the facts here concerning the possible exclusion of evidence.

None of the constitutional rights of the appellants, either to "due process" of law or the right to be present at every material stage of their trial, were violated. Nor was their nonpresence at the chambers inquiry a violation of Maryland Rule 775.

We are fully cognizant of the necessity of conferences between the court and counsel — either before or during a trial — for the purpose of discussing scheduling, other collateral matters of procedure, to hear arguments of law on evidentiary rulings, to confer on proposed instructions to the jury, and the like. Under the authorities hereinbefore cited such conferences have not been held to be a part of the trial. To require that all such conferences be conducted in open court, or that the defendant be present in chambers, or at a bench conference, on each occasion would create administrative burdens, diminish the decorum of the proceedings, and in many instances involve security risks —

480

none of which can be balanced by any gain from the defendant's presence.[14] Trials must, however, not only be fairly conducted but must, to the defendant, give every appearance of so being conducted.

> *In No. 302: judgment of the Court of Special Appeals affirmed; costs to be paid by the appellant.*
>
> *In No. 304: judgments of the Court of Special Appeals affirmed; costs to be paid by the appellants.*

---

14. *See* 8A J. Moore, Federal Practice § 43.04[2] (2d ed. 1974).